Good morning, your Honor's guests. Well, since the Attorney General's Office is appearing in print now for Gordon Palmer, I'd like to reserve for two minutes. If you'd like to decline, we'll try to help you. I'd appreciate it. Thank you. I'm too divergent, of course, to deliver a course of the evening, because I was based on a substantial issue by a British student who has overruled him, and I've heard it in part. I, Gordon v. Helling, in light of the Pennsylvania law in White v. Woodall, the course should follow Moore v. Helling, because Mr. Getz and Mr. Moore are in the same procedural posture. Once we're convicted under the casual instructions, once appeals were pending when Byford was issued, and both convictions were final prior to Buncleier. So your position is that your client is in the same position as Moore? That's correct, Your Honor. And if we follow Moore, then you'll be very happy? And the district judge started telegraphs that the district court had some problems with Moore coming out also. Is that correct? The district court also, I'm not quite sure I understood, Your Honor. The district court had written a warning indicating that the district court may get reversed if it doesn't perform. I don't know if she exactly said that, but I think the judge wants to get an idea. He can guess his case. But anyway, I agree that Moore v. Helling should reverse to pass Buncleier the argument that the court should also dismiss ground to Mr. Getz's federal petition. Because he has failed to show that the trial court's use of the casual instruction violated its due process rights. Bamwin ruled that the use of the casual instruction from Dowell in 1992 to Biford in 2000 did not violate the due process clause. He could also state that the casual instruction correctly reflected the law before Biford. Do we have to reach the casual question at all? The reason I ask that is if you look at the jury's sentencing statement and what they say and the conviction for robberies, there's clear evidence beyond question that in the murder conviction for felony murder lies. Therefore, whatever was done relating to Getz is harmless beyond a reasonable doubt. I would agree with that, Your Honor. I would also say that the error was harmless because that's what a Biford instruction had given the jury was fraternal guilty of a first-degree murder. Mr. Getz's claim that he was entitled to a rhetoric to an application of Biford for the Biford instruction because his conviction was not really final when Biford was decided as no merit. Because Biford was a change in state law. Do I understand correctly? You're relying upon a felony murder conviction as an effective, correct, harmless, pure analysis. Is that what you're saying? That's how he did it. So maybe I misunderstood you. I thought you were saying or agreeing with my calling here that because there was felony murder involved, that it really doesn't matter that this instruction may or may not leave a due process because it's harmless error. Did I misunderstand you? No, I think the trick is to get to that point where you're arguing that basically a reverse assailant should control the next case and that same application should be there to decide whether there was a concassinate instruction that did not violate a due process. How do you deal with the Riley case? Riley says it does. In Riley, they held a concassinate instruction that violated a due process where the defendant's conviction became final prior to Plow, which was issued in 1992. So, it's a game changer. Riley talked about a lot more than that. I mean, it wasn't so much the timing. It was the fact that the jury was supposed to be able to find certain elements and that there was enough confusion in the mind of the Riley panel, about which I don't self-think because I was on that panel. There was enough confusion in the mind of the jury that if there was a due process violation, why doesn't Riley apply in this case as well, regardless of whether it was final or not final? Riley said it was a proof of absolutely that the use of the concassinate instruction between Plow in 1992 and Byford in 2000 did not violate due process because during that time there was to be a murder. And that is the only one merged, menstruated element which the concassinate instruction described. Riley is agreeing with Babb that the use of the concassinate instruction did not violate due process between 1992 and 2000. So, from your perspective, the citation by the Riley panel of Babb is sufficient to get you over the due process hurdle? Do you think Riley approves of Babb's holding and Babb's ex-holding to cases that became filed prior to 1992? I think that Riley applies to any earlier cases. In terms of your reliance on the finality rule, I understand why, but I'm just saying, was it Riley's monitor that Riley indicated that just as a matter of federal constitutional law, that there was no due process here because essential elements of the crime were confusing to the jury or could have been confusing to the jury and sufficiently so that it constituted a due process violation? I don't think it was received well. As I stated, between Plow and Byford, Riley said the concassinate instruction was good law because the first degree murder in Nevada and because the first degree murder in Nevada included only one murder. We had a jury element. There only was one. And that the Byford and the concassinate instruction properly was a proper statement of state law during that time period. Do you see what I'm saying? Yeah, I have your position. Pardon? I understand your position. All right, thank you. But also, the deferred back on the point of the concassinate instruction does not inherently violate a due process. Thank you. I'm just going to move to the argument regarding the retroactivity of the Byford instruction. And I see you have three seconds or two minutes. So, I have to close the interview. Is there another one? Okay, very well. May it please the Court, I'm generally the first law office and federal defender for Jack Getz. Before I start, I just wanted to address Judge Garrison's question when he was there. I think, unfortunately, he was referring to the next case with respect to felony murder and interior city vault. Now, it's not a deceased. There was no felony murder. I'm just going to shoot him in the feet. That's okay. Or does the doctor show the outcome here? Mr. Getz is in a different procedural posture than the petitioner was in the court. Unlike in the law, Getz filed, a properly filed, through a proper mechanism, a post-conviction petition raising a discipline, giving the state court a second opportunity to get it right. By the time of the state court's decision on the state post-conviction petition in 2006, both the jury and public were on the books. And what's important about this is that the Nevada Supreme Court has stated, starting in 2003, up through 2008, that Buckley was, through established law, available to petitioners on post-conviction petitions. Therefore, if my jury is viewed as changing the law by the time of Getz's post-conviction petition in 2006, the Nevada Supreme Court has already said that he can avail himself of Buckley. So, at this point in time, we know that the Nevada Supreme Court doesn't disagree with these state codes, does not disagree with the district court's grant to get a district lease here, and they said so in DECA. So there's really no debate right now as to whether or not Getz should have been entitled to the application of five rooms for his case. And I also wanted to address a niche with respect to something that Judge Smith just brought up with respect to Riley and due process violations under cases like Coke. My adversary described the Nevada Supreme Court's description of this as one merged element, but that's not how they described it, even in this case, like they stated on 28J, that's not how they described what they had done in DECA, how they described what happened in these cases. They said that all three elements were still layered. They don't say that they removed deliberation. They don't acknowledge that. They acknowledged that in five rooms. But in DECA, they said, no, we didn't remove it. They said there'll be a discussion and we'll need to find all three elements. But that's just disagreement. The federal court's interpretation of whether the CAS law instruction is related to a process. I guess my perception is that in Riley, we were talking about the instruction, he's looking at the instruction and the way it operated as a matter of federal constitutional law. It's my understanding, I think, correct, that federal courts, even with federal constitutional issues, prevail over state courts dealing with statewide issues. Is that your perception as well? That's absolutely correct. That is a federal constitutional matter. And the Supreme Court, this court said that in a book. And that's exactly what the federal constitutional law is. So if that's right, and if Riley looked at the instruction and concluded that the instruction was confusing enough as to essential elements of a serious crime that it violated federal constitutional due process, isn't the state's only remedy to show that there was a rival's error? I believe that's correct. In this particular situation, the district court correctly found that this error cannot be considered a rivalist. The inconclusive evidence of deliberation brought to the prosecutor's comment established grave doubt as to the rival's innocence of error. As the district court correctly framed it, there's no way to know based on the evidence whether he gets acted with a deliberate determination to kill or whether this was part of a passionate confrontation that escalated into a shooting. And those conflicting inferences brought here is exactly why this situation was so powerful. And the jury agreed that this was more akin to a passionate confrontation that escalated. There would be no deliberation. There would be no confliction. There would be no dispassionately in process. All of the things that the district court said in Fifer must be there for deliberation. Either the jury found that the casement instruction directed them to find a first-degree murder, and the prosecutor's comments in closing made the situation much worse. Well, I have the casement instruction. They said that premeditation could be instantaneous. It could happen at the moment that the shooting itself happened. It could happen in between the final two shots, even if they happened one after another. So even under the prosecutor's theory here, there was no room for deliberation. So I do believe that the district court correctly found that the theory cannot be considered harmless. Let me ask you something on quarter 5, please. I was interested in what the district court's take was on this, and I'm quoting from her quarter. I was asking your officer about this. The only and more racist financial issue regarding the courts, meaning her quarter, and judgment-grinding behavior, is because, if the conviction appears to have become final prior to the issuance of a plea, the court's quarter and judgment-grinding behavior's belief is likely to be reversed. It looked like to me the district judge is sending a message, you're going to lose this one, and that the district court wants it back to make a hearing with under what order? Well, I think that's reading a little bit too much into the district court's decision there. I mean, obviously, it's up to this panel to decide whether or not her decision gets reversed. Maybe we may vacate and send it back when the district court sends a message that I'd really like to look at it again under what order. We have the opportunity to vacate and send it back between district judges. Sending messages is being serious. Well, before the district court, there was no issue as to whether or not the second attempt at getting a post-conviction review where Bunkley was on the books is sufficient to have put this issue, put that second decision, that 2006 post-conviction decision, whether that put it within the realm of Bunkley applying to his case. That's something that the district court never considered. It's something that's first raised now in light of more. It's amazing that... Are you taking the position that your client's case is quite horrible, the same position as horrible? Well, it's the extent that his conviction became final after 5-3. Well, it's the extent, don't you think, your client, that he has the same position as horrible? Well, because for a lowly racist claim on direct appeal, and at that point, Bunkley wasn't on the books, it's different because he threw a proper mechanism, and we know it was a proper mechanism because the Nevada Supreme Court said so on Thursday that this is a claim that could be raised in post-conviction. He raised it again in post-conviction, and by the time of his decision in 2006, Bunkley was on the books, and the Nevada Supreme Court had made it clear that Bunkley was available to begin on post-conviction. Is that the argument the district court is suggesting that the court would like to look at? The district court would like to look at it? I can't say about that. I'm just reading what the district court said in the order. I mean, it looks like to me that the court thought that there would be a reversal in this case. Well, I definitely hope so, and the fact that the district court judge relied on that, and there's an intervening product from the court that's then called into question. You know, making these grants based on that, whether they should remain in place, I think that would make any district court judge nervous. Well, they've got a sign trying to do something on a speeding train that never stops, and I hope it's simmered down a little bit and the Nevada Supreme Court make a decision. I don't know. I think it's open up a whole new bag of worms because I think they're interpreting Nika different than the way this court interpreted Nika and different from how they interpreted Nika back in 2008 when they considered it. We do, because Levitt's an unpublished opinion that cites, rightly, as a parenthetical issue, which probably has little influence at all. Well, actually, the 2018 literature says that Levitt has been unpublished. That's why I view that Levitt is now raising a lot of questions about whether or not this court should ever move away from Polk and that, because I believe that this court's understanding of what the Nevada Supreme Court was doing was removing that element of liberation. Now they're coming back in Levitt and saying, no, no, no, it was always there. It was always there. If that's the case, then this is just a disagreement about how we're interpreting the cast of the church and whether or not it violated the process of removal of that element. Is there a conflict between O'Reilly and Moore? Well, we argued in the briefs that there was, and it has to do with how could you decide upon what the state of law is at the time of the disposed and relevant decision. In O'Reilly's briefs, it was simply put to the status of law in existence at the time the conviction became final. However, in Moore, this court looked to a decision from 2008 to determine what the law was in 2001. That's inconsistent with O'Reilly. I mean, it's about what the law was in existence. 222.51d1 is a temporal analysis. It is what was the state of the case, the state of the law, at the time of the relevant state court decision. I don't agree with that. Or O'Reilly's argument. I guess you could make the argument that O'Reilly's did that. With respect to that, no, I'm not quite... I don't agree with that statement. I'm simply asking you as the statement's requested, why would you say that we should not say O'Reilly was victim in his relationship to Moore? Well, because O'Reilly is using the analysis that he used to determine what the state of the law was to determine whether there was a due process by which he had his arms. But the statement, the analysis in O'Reilly that you like is being challenged now by my question of whether that was just due to... It doesn't mean that we wouldn't follow it when just we get to know it. But for purpose of analysis, how would you argue that it's not due to... Well, I think it's evidence that O'Reilly holding that at the time the conviction became final, the status of the law was, in this case called Hearn, was that there were three elements that needed to be proven. So then he was fully looking at what was the state of the law, I believe, in the 1990s, what was going on in O'Reilly. But in Moore, we have the situation where at the time his conviction became final, it's 2001, and the case on the books that day was Garner, and Garner specifically said, and by far it was a clarification, that 2008, if you know that history before, changes its mind and says, oh, you know, Garner, we didn't mean what we said in Garner, we're overruling that, and now we're going to say it's changed. But that's 2008. That's not what was... That's not what, decorally speaking, was going on in 2000, and why at the time of the Ralph and Sting court decision in Moore. So O'Reilly's looking at the case in existence at the time the conviction became final, while in Moore they're looking at 2008, a case that postdates Ralph and Sting court decision by seven years, and it's not that this report can't change its mind, that's fine, it can change its mind within constitutional limitations, but the analysis should have included that decision. If we're going to be using 2054 to demonetize for a temporal analysis, that's how we can see Stephen O'Reilly was simply looking at the line in existence at the time the conviction became final, which is essentially the time of the Ralph and Sting court decision. So I don't believe... Oh, you asked a good question. I actually have one. That's just, O'Reilly was a three-judge panel, Moore was a three-judge panel, or Camp overruled O'Reilly, can't it? I guess it can't, I mean, it's O'Reilly's second in time, so... I don't know, I mean, basically, a three-judge panel can't overrule a three-judge panel, and the Supreme Court can do that, or an unthought panel under Miller versus Camp, right? That's correct, but it doesn't mean that there isn't this inter-circuit inconsistency that I do believe needs to be addressed. So you mean to tell me that nine-circuit opinions are entirely inconsistent? I am shocked. We call that tension. However, to describe, I do think that it's something that, if the Supreme Court is not inclined to agree that Mr. Getz's havoc side of the Moore situation is something that needs to be addressed, because it is effective. Okay, thank you very much. Thank you. Pardon me. Take care of the episode, everybody. Thank you. Thank you, Your Honor. Thank you. I'd just like to mention first that Mr. Getz has cited from authority that it clearly establishes that the Nevada Supreme Court must apply Bunkley and his state clause conviction from proceeding to a conviction which was final before Bunkley was decided. His argument that the post-conviction order is the relevant decision is incorrect. The relevant decision is Nevada Supreme Court affirming its conviction. Further, so Bunkley, the Ohio State Supreme Court, the ACL, the changes in state law as a matter of due process must be applied to convictions that are not yet final. Mr. Getz's conviction was final before Bunkley, so there's no clearly established Supreme Court law that says how to apply for destruction as a violation of a due process. Nietzsche reiterated that life was a change in the law and specifically it doesn't have anything else that was stated in Garner. He said that that part was basically incorrect. Nietzsche suggested that I'm going to the harmless error just point out as we stand in the brief I'd like some facts that the district court didn't spend much time on this but Mr. Getz drew Mr. Queer out to a deserted area at midnight roughly on Christmas. He had a gun and Mr. Queer didn't have a gun and Mr. Queer wasn't wearing any clothing. Fact shows he planned to bring his mother there. He brought a gun and killed him because he got his daughter pregnant. Based on that, the court should reverse the district court's decision because Mr. Getz has shown that there's no violation of the clearly established Supreme Court law. Thank you. Thanks to both counsels for your helpful argument. We appreciate it. The case just argued is submitted.
judges: Wallace, M. Smith, Erickson